## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| DANNY LEE WARNER, JR., | : | Case No. 2:24-cv-1565 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | District Judge Michael H. Watson |
| | : | Magistrate Judge Kimberly A. Jolson |
| ANNETTE CHAMBERS-SMITH, et al., | : | |
| | : | |
| Defendants. | : | |

## ORDER AND
## REPORT AND RECOMMENDATION

Plaintiff, a prisoner at Mansfield Correctional Institution, has filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 against thirty-one named Defendants and twenty-five Jane/John Doe Defendants. (*See* Doc. 1-1 at 4–6.) The named Defendants include individuals from the Montana Department of Corrections (MDOC) and Ohio Department of Corrections (ODRC), including individuals from Ohio's Lebanon Correctional Institution (LeCI), Madison Correctional Institution (MaCI), and Mansfield Correctional Institution (ManCI). From ODRC, Plaintiff names Director Chambers-Smith, Interstate Corrections Compact Liaison Reveal, Religious Services Administrator Davis, Deputy Chief Inspector Wilson, Chief Inspector Lambert, and Inspector Tabor. From LeCI, he lists Warden Harris, Inspector Hoover, Chaplin Palmer, Case Manager Billingsly, Unit Manager Johnson, Secretary Smith, Terra Gray, Sgt. Estep, Cashier's Office Supervisor Ron Watts, Mailroom Supervisor Payne, Dr. Rojas, and Health Services Administrator Ullery. From MaCI, Plaintiff names Inspector Gould, Chaplin Casto, Jessie Willis, Sgt. Lyons, and Food Services Head Kohn. From ManCI, he sues Inspector Blankenship, Warden McConahay, Librarian Weidner, and Unit Manager Henry. From MDOC,

he names Associate Wardens Godfrey and Reich, Warden Salmonsen, and MDOC Legal Counsel Somogy. Plaintiff also lists twenty-five John/Jane Doe Defendants, including Jane/John Doe 1–15 mailroom employees at CRC, LeCI, MaCI, and ManCI. (*See* Doc. 1-1 at 3–6).

By separate Order, Plaintiff has been granted leave to proceed *in forma pauperis.* Now, this matter is before the Court for a *sua sponte* review of the Complaint to determine whether the Complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a Defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b). Also before the Court is Plaintiff's motion for an injunction and declaration of rights. (Doc. 2).

## I.      SCREENING OF PLAINTIFF'S COMPLAINT

### A.      Legal Standard

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e) as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> \*\*\*
>
> (B) the action or appeal—
>
> (i) is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B); *Denton*, 504 U.S. at 31; *see also* § 1915A(b). Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd. P'Ship v. Flagstar Bank*, *F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of

3

considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd. P'Ship*, 727 F.3d at 504 (citations omitted).  Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  This lenient treatment, however, has limits, and "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### B.    Allegations in the Complaint

Plaintiff alleges that, under the Interstate Corrections Compact ("ICC"), he was transferred from the Montana Department of Corrections (MDOC) to the Ohio Department of Rehabilitation and Correction (ODRC), where he is currently located.  According to Plaintiff, his transfer was the result of a conspiracy on the part of MDOC and ODRC Defendants to retaliate against him for filing a February 2022 lawsuit against Defendants Godfrey, Reich, and Salmonsen in Montana. Plaintiff asserts, amongst a number of other claims, that he was denied due process in connection with the transfer and subsequently deprived of his rights to practice his religion and access the courts/legal mail in various ODRC facilities.  (Doc. 1-1 at 1–2).  Plaintiff further alleges that Defendants have violated several provisions of Montana Code Annotated § 46-19-401 and Ohio Revised Code § 5120.50, the Montana and Ohio statutory provisions governing ICC transfers. Specifically, under § 5120.50(D)(6), Plaintiff claims that he has been deprived of legal rights that he possessed in Montana.  *See* Ohio Rev. Code § 5120(D)(6) ("The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state.").  Based on the

4

allegations in the Complaint, which span from June 1, 2022, until 2024, Plaintiff brings at least eighty "separate and distinct claims" against Defendants. (*See id.* at 20–36).

              *1.*     *Transfer and Prison Conditions*

With respect to his transfer, Plaintiff asserts that MDOC Defendants Godfrey, Reich, Salmonsen, and Somogy conspired with ODRC Defendants Reveal and Chambers-Smith to retaliate against him for filing a lawsuit in February 2022 in the United States District Court for the District of Montana. (*See* Doc. 1-1 at 2, 21). Plaintiff claims that he was transferred days after filing the lawsuit and that he was not provided any notice of the impending transfer, an opportunity to be heard, or ability to appeal the transfer. (*Id.* at 7–8). Plaintiff claims that this violated both Montana Code Annotated § 46-19-401 and Ohio Revised Code § 5120.50. (*Id.*). Premised on his allegation that his transfer was invalid and carried out in the absence of due process, Plaintiff claims that his confinement in Ohio constitutes false imprisonment. (*Id.* at 6–7).

It appears that Plaintiff was transferred to the Corrections Reception Center (CRC) on June 1, 2022, where he was placed in solitary confinement for a period of thirty days. Plaintiff contends the conditions of confinement at the CRC as violated the ICC statutes, which require that individuals transferred via the compact be treated in a reasonable and humane manner. (*Id.* at 7–8). Regarding the CRC, without further factual elaboration, Plaintiff alleges that he "was never given clean clothes, the cell was excessively hot and humid, and he was denied all religious accommodations, medical care, and access to the courts." (*Id.* at 7). Yet Plaintiff does not name any Defendant at CRC in this action.

On September 14, 2022, Plaintiff alleges that Defendant Harris stated that Plaintiff was transferred to Ohio for filing grievances and lawsuits in Montana. Plaintiff further alleges that in response to his grievance concerning his "illegal transfer to Ohio," Harris erroneously stated that his transfer was governed by Montana, rather than Ohio law. (*Id.* at 8).

Plaintiff alleges that he wrote to MDOC Defendants Reich and Somogy on several occasions between June 2022 and January 2024 concerning the prison conditions at the ODRC but that these Defendants ignored his letters. (*Id.*).

### 2. *Legal Mail*

The Complaint also includes allegations regarding Plaintiff's legal mail and ODRC mail policy. Plaintiff alleges that Defendant Chambers-Smith authorizes ODRC to improperly open legal mail outside an inmate's presence, photocopy the mail, and treat legal mail as regular institutional mail. (*Id.* at 9 (discussing ODRC's mail policy, 75-MAL-01)). Plaintiff further alleges that Defendants Payne, Smith, Grey, and John/Jane Does mailroom employees implemented the policy. (*Id.* at 10, 17–18, 24).

Plaintiff claims that he has had well over one hundred pieces of legal mail opened outside his presence, photocopied, and treated as regular mail under the policy. (*Id.* at 9). Plaintiff further alleges that he has had legal mail arbitrarily returned to the sender with no notice or an opportunity to challenge the determination regarding the mail, as well as instances of his "legal materials [being] cut off in the photocopying process" or missing. (*Id.*). According to Plaintiff, the improper opening of legal mail outside his presence and the requirement that he obtain a control number to receive mail from his attorney(s) resulted in delay, incomplete transmission of his legal mail, and missed filing deadlines.

On June 27, 2023, for example, while at LeCI, Plaintiff alleges that he only received "the cover page and pages 3, 5, 7, and 9" of the State of Montana's response to a pending appeal in the Montana Supreme Court. (*Id.* at 10). According to Plaintiff, the mail was treated as regular mail under the ODRC policy, resulting in delay of receipt of the document and the inability to respond fully, as the mailroom informed him that the original document was lost.

6

The Complaint also includes allegations that Defendants Smith and Grey lost several legal documents at LeCI, which Plaintiff alleges resulted in the dismissal of his post-conviction petition appeal. (*Id.* at 17–18). Plaintiff alleges that he complained about the lost documents to Defendant Inspector Hoover, but that Hoover refused to investigate the issue or permit Plaintiff to file an informal complaint/grievance. (*Id.* at 18).

Plaintiff further alleges that on October 31, 2023, the MaCI mailroom "improperly returned two pieces of legal mail that Plaintiff had sent out to the Ohio Supreme Court and Ohio Attorney General." (*Id.* at 11). As a result of the delay, Plaintiff claims his filings were deemed untimely, rejected by the Ohio Supreme Court, and his habeas corpus petition was dismissed. (Doc. 1-2 at 40).

Finally, with respect to the access of the courts, Plaintiff claims that Defendants Hoover, Wilson, and Lambert arbitrarily placed him on grievance restriction. (Doc. 1-1 at 20). Plaintiff further claims that Hoover regularly reclassified his grievances as kites, denying him the ability to exhaust his administrative remedies.

### 3. *Religious Accommodations*

Plaintiff also claims that he has been deprived of the ability to practice his religion in the Complaint. Exhibits attached to the Complaint indicate that Plaintiff belongs to the religion Odinism. (Doc. 1-3 at 3–10). According to Plaintiff, the MDOC permitted him to perform Blót in Montana, and under the ICC, he is entitled to the same accommodations in Ohio. Plaintiff describes Blót as "a ritual that requires specific religious items and a series of actions done outside, under the open sky, with a fire that sends offerings to the heavens, and firmly rooted in the natural earth." (*Id.* at 14). Plaintiff alleges that Defendant Palmer—the LeCI chaplain—told him that he would serve as Plaintiff's volunteer so that he could perform the Blót. (*Id.*). However, Plaintiff's May 9, 2023, request for a religious accommodation allegedly went unanswered and ignored.

Plaintiff makes similar factual allegations with respect to his May 9, 2023, request for accommodations for the Winter Nights Fast and Feast, which Plaintiff indicates requires meals to break his fast between September 23, 2023, and October 14, 2023.  Plaintiff further claims the requested accommodation is virtually identical to the accommodations provided to inmates of other religions and that he was previously awarded declaratory and monetary relief in federal court based on the same issue.  (*Id.* at 14–16).  Plaintiff alleges that on September 24, 2023, Defendant MACI Chaplain Casto initially provided him with a Religious Services Memo stating that he was approved to observe the religious fast and would be provided with meals to eat after sundown. (*See id.* at 15; Doc. 1-3 at 10).  However, Plaintiff claims that on September 25, 2023, Defendant Kohn denied him the accommodation, informing Plaintiff, "We're not going to accommodate some made up religious fast," and that "you crackers think you can make up a religion and we have to honor it."  (Doc. 1-1 at 15).  It appears based on the grievance form attached as an exhibit to the Complaint that Plaintiff's accommodation request was denied on October 2, 2023, by Defendant Religious Services Administrator Michael Davis.  (Doc. 1-3 at 14–15).

On August 10, 2022, Plaintiff claims that Defendants asserted that Plaintiff's legal, religious name would be used only as an alias.  (Doc. 1-1 at 16).  Plaintiff maintains that he legally changed his name long before being transferred to Ohio and that the name is used by Montana.

### 4.    *Mansfield Correctional Institution*

The Complaint also includes a number of claims concerning alleged incidents in ManCI. Plaintiff first asserts that while at ManCI, he was denied legal materials related to his Montana criminal conviction.  Plaintiff alleges that the MDOC provided him with a hard drive containing Montana law and case precedents, but that Defendants McConahay, Blankenship and Weidner denied him access to these materials, as well as "legal disks related to his criminal case" in December of 2023.  (*Id.* at 12).

8

On January 16, 2024, Plaintiff claims Defendant Blankenship issued him a disciplinary report for allegedly giving false information in retaliation for filing a prior grievance. (*Id.* at 18–19).

Plaintiff next alleges that on January 22, 2024, also while at ManCI, he was sprayed with four long blasts of OC spray in violation of his right against excessive force. Plaintiff claims that no use of force investigation was carried about by the ODRC following the incident. Plaintiff further alleges that he was left for several hours—from 8:00 P.M. until approximately 6:30 A.M. the following morning—without bedding, clothing, or any means to clean off the OC spray. (*Id.* at 17).

On the same date, Plaintiff alleges that he had a seizure. According to Plaintiff, he reported the seizure to two unidentified correctional officers at least six times throughout the night but was denied medical treatment. Plaintiff alleges that "this was a continuation of the campaign of retaliation initiated by McConahay because he believed that plaintiff had 'snitched' on him by writing to the Montana officials regarding his situation in Ohio." (*Id.*).

Next, Plaintiff alleges that on January 24, 2024, Defendant Henry deliberately disposed of Plaintiff's religious property without due process. (*Id.* at 16). According to Plaintiff, when he attempted to explain to Henry that he obtained the items according to policy, Henry became upset and stated that he, not Plaintiff, decides what policy is at ManCI.

### 5. *Miscellaneous Claims*

The Complaint includes several other miscellaneous allegations unrelated to Plaintiff's legal mail and religious accommodations claims detailed above. (*See id.* at 18–20).

First, on July 20, 2022, Plaintiff alleges that he wrote a grievance regarding pain medication. (*Id.* at 19). Plaintiff alleges that Defendant Dr. Rojas and LeCI Health Services

Administrator Ullery failed to review his medical history and improperly denied Plaintiff the medication. (*Id.* at 27, 31).

Plaintiff alleges that he was improperly charged $20 for medical copays. (*Id.* at 18). Plaintiff complained to Defendant Watts through the grievance process on January 5, 2023; however, Plaintiff claims Watts incorrectly determined the funds were properly withdrawn from his account. (*See* Doc. 1-3 at 29).

Plaintiff next claims that on January 30, 2023, Defendant Estep found him guilty of a disciplinary infraction as retaliation for filing a previous grievance. (Doc. 1-1 at 18).

Finally, in November 2023, Plaintiff claims Defendants Gould and Lyons improperly confiscated Plaintiff's MP3 player. (*Id.* at 19).

      *6.*    *Relief*

For his claims, Plaintiff seeks declaratory and injunctive relief, as well as monetary damages. (*Id.* at 36–37).

**C.   Analysis**

At this stage of the proceedings, without the benefit of an answer or other briefing, the Undersigned concludes that Plaintiff may proceed with his First Amendment access-to-courts and legal-mail, Sixth Amendment right-to-counsel, and Fourteenth Amendment due process claims against Defendants Chambers-Smith, Payne, Smith, Grey, and John/Jane Doe mailroom employees, based on his allegations that these Defendants approved, implemented, and/or enforced ODRC's legal mail policy in violation of his rights. (Doc. 1-1 at 23 ¶ 129; 30, ¶ 167–68; 34 ¶ 186).

Plaintiff has also stated plausible First Amendment and Equal Protection claims based on his allegation that Defendants Palmer, Casto, Kohn, and Davis denied him religious accommodations and the ability to practice his religion. (*Id.* at 28 ¶ 157–59; 32 ¶ 175–76). To the

extent that Plaintiff seeks declaratory and injunctive relief, Plaintiff's RLUIPA claims may also proceed against Defendants Palmer, Casto, Kohn, and Davis. (*Id.* at 22–23 ¶ 127–28).

Finally, out of an abundance of caution, Plaintiff may proceed with his supplemental state law claims under Ohio Revised Code § 5120.50 (but only as they relate to Plaintiff's legal mail, access-to-courts, and denial of religious accommodations claims), based on his allegation that he has been denied legal rights in Ohio that he had in Montana. (*See id.* at 14 ¶ 82).

Upon initial review of the Complaint, the Undersigned finds these claims are worthy of further development and may proceed at this stage of the proceedings. Still, "[t]he court has not made a determination on the merits of [Plaintiff's] claims or potential defenses thereto, nor are Defendants precluded from filing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Wiley v. Austin*, No. 8:20-CV-220, 2020 WL 6204382, at *3 (D. Neb. Oct. 22, 2020).

But for the reasons provided below, Plaintiff's remaining claims should be dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

### 1. *Improper Joinder*

Plaintiff's various claims unrelated to his mail and religion claims are improperly joined in this action. Plaintiff has filed a forty-six-page Complaint (with a hundred pages of exhibits) consisting of factual allegations spanning several years against fifty-six Defendants from different states, at multiple institutions, and concerning separate and distinct issues and incidents. The majority of these claims are asserted against different Defendants and are unrelated to his claims concerning the ODRC legal-mail policy/access-to-courts and alleged denial of religious accommodations claims.

These include Plaintiff's claims that he was improperly denied medication by Defendants Dr. Rojas and Ullery; improperly charged for medical copays; found guilty of a disciplinary

infraction by Defendant Estep in retaliation for filing a prior grievance; and had his personal property improperly confiscated by Defendants Gould and Lyons; as well as his claims originating at ManCI, which is located in the Northen District of Ohio. *See Clemons v. Wexford*, NO. 20-c-50330, 2020 WL 13816796, at \*4 (N.D. Ill. Oct. 5, 2020) ("Generally, claims regarding events in different prisons should be brought in separate lawsuits in the appropriate judicial district."). As noted above, with respect to ManCI, Plaintiff alleges that Defendants Blankenship, Weidner, and McConahay denied him access to a hard drive; that Defendant Blankenship issued him a retaliatory disciplinary report; that on January 22, 2024, that he was subjected to excessive force and denied medical attention; and that, on January 24, 2024, Defendant Henry disposed of Plaintiff's property without due process.

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit. Under Rule 20(a)(2) "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transaction or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law and fact." *Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009). Permitting a prisoner to assert unrelated claims against different defendants in the same action would undermine the PLRA's purpose of curbing frivolous prisoner filings and dilute the impact of the statute's fee payment and three-strike provisions. *See Gresham v. Washington*, No. 1:15-cv-1067, 2016 WL 81696, at \*7 (W.D. Mich. Jan. 6, 2016) (collecting cases).

In this case, the Complaint asserts a multitude of factual allegations, which arise out of different transactions or occurrences; involve the actions of different ODRC, LeCI, MaCI, and

ManCI employees; and involve distinct questions of law and fact. *See* Fed. R. Civ. P. 20(a)(2). If Plaintiff wishes to pursue his claims unrelated to the alleged legal mail and religious accommodation claims, he must do so in separate actions that each comply with Federal Rule of Civil Procedure 20(a)(2) and after paying the filing fee required to do so.

Therefore, Plaintiff's miscellaneous claims against Defendants Rojas, Ullery, Watts, Estep, Gould, and Lyons, as well as his claims against ManCI Defendants Blankenship, Weidner, McConahay, and Henry should be dismissed without prejudice. *See* Fed. R. Civ. P. 21.

### 2. *Montana Defendants, Conspiracy, and Retaliation Claims*

Similarly, Plaintiff's claims against Defendants Godfrey, Reich, Salmonsen, and Somogy, who are residents of Montana, should be dismissed without prejudice. As noted above, Plaintiff alleges that the MDOC Defendants retaliated against him for filing a February 2022 lawsuit against Defendants Godfrey, Rieich, and Salmonsen in Montana. Plaintiff further alleges that the transfer violated Montana law and his due process rights, as he was denied notice or a hearing prior to the transfer. (*See* Doc. 1-1 at 36). Because the events giving rise to Plaintiff's claims against the MDOC Defendants occurred in Montana, his claims against these Defendants are not properly brought in the Southern District of Ohio. *See* 28 U.S.C. § 1391(b) (providing that venue is proper in "a judicial district where a substantial part of the events or omission giving rise to the claim occurred").

What's more, Plaintiff's conclusory allegations regarding a conspiracy between the MDOC and ODRC Defendants are insufficient to join his Montana claims to those claims properly before this Court. *See, e.g.*, *Brown v. Cool*, No. 2:21-cv-5146, 2023 WL 10511455, at *2 (S.D. Ohio May 10, 2023) (finding the plaintiff's alleged retaliatory transfer and mistreatment for filing grievances at a separate facility "is not a basis for combining into one lawsuit unrelated claims against different defendants"); *Washington v. Folino*, No. 11-1046, 2013 WL 980608, at *1 (W.D.Pa. Mar.

13

13, 2013) (finding the plaintiff's "overarching theme of retaliation, or a retaliatory conspiracy, insufficient to provide a basis to join unrelated transactions and defendants" under Rule 20). Plaintiff alleges that ODRC Defendants Director Chambers-Smith and ICC Liaison Reveal conspired with MDOC Defendants Godfrey, Reich, Salmonsen, and Somogy to retaliate against him and that the factual allegations alleged throughout the complaint were the result of a "concerted campaign" to deprive Plaintiff of his constitutional rights. (*See* Doc. 1-1 at 2). Without factual elaboration, Plaintiff claims these Defendants "knew he would not be able to practice his religion in Ohio" and conspired to deprive him of that and other constitutional rights. (*Id.* at 22).

Yet it is well-settled in the Sixth Circuit that conspiracy claims must be pleaded with "with some degree of specificity, and vague and conclusory allegations unsupported by material facts are not sufficient to state a claim." *Hamilton v. City of Romulus,* 409 F. App'x 826, 835 (6th Cir. 2010); *see also Moldowan v. City of Warren,* 578 F.3d 351, 395 (6th Cir. 2009) (affirming dismissal of conspiracy claims under 42 U.S.C. § 1983 because the plaintiff failed to plead the claims with the "requisite specificity").

Here, even after construing the Complaint liberally, Plaintiff's factual allegations are insufficient to suggest that the MDOC and ODRC Defendants shared a conspiratorial objective or otherwise planned together to deprive Plaintiff of constitutionally protected rights. Although Plaintiff alleges he was transferred in retaliation after filing a lawsuit, the Complaint does not include any factual allegations to plausibly suggest that Defendants Reveal or Chambers-Smith, the ODRC individuals who allegedly conspired, were aware of Plaintiff's Montana lawsuit, much less that the transfer or subsequent alleged constitutional violations alleged in the Complaint were motivated by the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). And although Plaintiff alleges that Defendant Harris, LeCI Warden, later stated that Plaintiff was transferred "for filing grievances and lawsuits in Montana" (Doc. 1-1 at 7), Plaintiff includes no

factual allegations plausibly suggesting that Harris played any part in the decision to transfer Plaintiff. Nor does he otherwise claim Harris was a party to the conspiracy. (*Id.* at 21 ¶ 122).

Conversely, Plaintiff fails to allege any non-conclusory facts plausibly suggesting, as Plaintiff contends, that the MDOC Defendants conspired to deprive him of his ability to practice his religion or any other constitutional right in Ohio. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). Without any "further factual enhancement" Plaintiff's conclusory allegations are simply insufficient to state an actionable claim for relief. *Twombly*, 550 at 555–57; *see also Whiteside v. Collins,* No. 2:08-cv-875, 2009 WL 4281443, at *9 (S.D. Ohio Nov. 24, 2009) (finding the plaintiff's retaliation claim was subject to dismissal, noting that "conclusory allegations of retaliatory motive and temporal proximity alone are insufficient to establish his retaliation claim"), *report and recommendation adopted*, 2010 WL 1032424 (S.D. Ohio Mar. 17, 2010).

Accordingly, Plaintiff's claims asserted against Defendants Godfrey, Reich, Salmonsen, and Somogy are not properly joined to the claims appropriately before this Court and should be dismissed without prejudice. *See* Fed. R. Civ. P. 21. Having found that Plaintiff's conclusory allegations of conspiracy and retaliation are insufficient to state a claim for relief against the named ODRC Defendants, Plaintiff's conspiracy claims against Defendants Reveal and Chambers-Smith, (*see* Doc. 1-1 at 21–33 ¶ 122–123), and his retaliation claims against Defendants Chambers-Smith, Reveal, and Harris, (*id.* at 26 ¶ 146–47), should be dismissed.

### 3.  *False Imprisonment and Due Process*

Based on his contention that his transfer violated the ICC, Plaintiff alleges that "Ohio has no lawful right or privilege to detain" him, and his Ohio custody constitutes false imprisonment.

(Doc. 1-1 at 22, 30). Specifically, Plaintiff argues that under Ohio Revised Code § 5120.50(D)(2), Ohio's ICC statute, he was entitled to a hearing regarding the transfer. *See* Ohio Rev. Code § 5120.50(D)(2) ("No transfer shall take place pursuant to this compact unless one of the following has occurred: (a) the inmate has given his written consent to such transfer; (b) in the event the inmate does not consent to such transfer, a hearing shall be held and a record made indicating the reasons for the said transfer."). On this basis Plaintiff also claims that his due process rights were violated. (*Id.* at 7, 34).

First, to the extent that Plaintiff alleges that his Ohio custody amounts to false imprisonment under Ohio law, his claims are barred from review under the doctrine of *res judicata*. Plaintiff raised this claim in the Ohio Court of Claims in 2023. *See Blodharn v. ODRC*, Case No. 2023-00218JD (Ohio Ct. of Claims Mar. 17, 2023).[1] As here, Plaintiff asserted "a broad array of factual and legal assertions", including the claim that violations of the ICC resulted in false imprisonment.[2] As the Court of Claims summarized, "Plaintiff alleges that Defendant has violated the Interstate Corrections Compact (ICC)" and "that Defendant has no privilege to confine him and has falsely imprisoned him since June 1, 2022." *Id.* On August 18, 2023, the Ohio court dismissed Plaintiff's false imprisonment claim for failure to state a claim.

"The doctrine of *res judicata*, or claim preclusion, provides that a final judgment on the merits of an action precludes the 'parties or their privies from relitigating issues that were or could have been raised' in [that] prior action." *Harris v. Ashley*, No. 97-5961, 1998 WL 681219, at *2 (6th Cir. Sept. 14, 1998) (per curiam) (quoting *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995), in turn quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). The

---

[1] Viewed at https://ohiocourtofclaims.gov/public-records/ under Case No. 2023-00218AD. This Court may take judicial notice of court records that are available online to members of the public. *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

doctrine applies not only to issues which were actually raised and litigated in the prior action, but also to any issues "which the parties, exercising reasonable diligence, might have brought forward at the time." *Id.* at *3 (internal citation and quotation omitted); *see also Parker v. Gibbons*, 62 F. App'x 95, 96 (6th Cir. 2003) (citing *J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211,213 (6th Cir. 1996) ("Under claim preclusion, a final judgment on the merits bars any and all claims by the parties or their privies based on the same cause of action, as to every matter actually litigated as well as every theory of recovery that could have been presented.")).  Consideration of a subsequent complaint is precluded under *res judicata* if: (1) there is a final, valid decision on the merits by a court of competent jurisdiction; (2) the second action involves the same parties or their privies as the first; (3) the second action raises claims that were or could have been litigated in the first action; and (4) the second action arises out of the transaction or occurrence that was the subject matter of the previous action. *Portage Cnty. Bd. of Comm'rs v. City of Akron*, 846 N.E.2d 478, 495 (Ohio 2006) (citation omitted).

The Undersigned finds that all four elements necessary for the application of the *res judicata* doctrine are present in this case.  The judgment entered by the Ohio Court of Claims in favor of the ODRC operates as an adjudication on the merits for *res judicata* purposes, and the instant case involves the same parties or their privies as the prior action. *See Lenoir v. Ohio Dep't of Rehab & Corr*, Case No. 1:17-cv-586, 2019 WL 3892470, at *5 (S.D. Ohio Aug. 16, 2019) ("Although plaintiff filed suit against the ODRC in his Ohio Court of claims case, defendants . . . as state prison employees, share a mutuality of interest and desired result and thus are in privity with the ODRC.") *report and recommendation adopted* 2019 WL 4168968 (S.D. Ohio Sept. 3, 2019).  Further, Plaintiff's claim was raised in the Ohio Court of Claims and arises from the same core of operative facts.  Accordingly, Plaintiff's state-law false imprisonment claim, premised on violations of the ICC, should be dismissed based on the doctrine of *res judicata*.

Plaintiff's federal due process claims related to his transfer should also be dismissed.  (*See* Doc. 1-1 at 22).  Plaintiff fails to state an actionable claim under Section 1983 to the extent that he claims his due process rights were violated based on alleged violations of the ICC.  *See Counts v. Wy. Dep't of Corr.*, 854 F. App'x 948, 953 n.2 (10th Cir. 2021) ("[A]lleged violations of the [Interstate Corrections Compact] do not constitute violations of federal law and therefore are not actionable under § 1983.") (internal quotation omitted); *see also Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007) ("Allegations of state law or state constitutional violations will not support a § 1983 claim.").  Plaintiff otherwise does not have a protected liberty interest in avoiding an interstate prison transfer.  *Olim v. Wakinekona*, 461 U.S. 238, 248 (1983) ("[A]n interstate prison transfer, including one from Hawaii to California, does not deprive an inmate of any liberty interest protected by the Due Process Clause in and of itself"); *Ford v. Harvey*, 106 F. App'x 397, 399 (6th Cir. 2004) ("[A] prisoner does not have a constitutional right to placement in any particular prison[.]").

Finally, in the body of the Complaint, Plaintiff alleges that his placement in solitary confinement at the CRC violated his due process rights.  (Doc. 1-1 at 7).  In *Sandin v. Conner*, the Supreme Court held that the Fourteenth Amendment confers on prisoners only a "limited" liberty interest "to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or which "will inevitably affect the duration of his sentence."  515 U.S. at 484, 487; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Williams v. Wilkinson,* 51 F. App'x 553, 556 (6th Cir. 2002).  The Sixth Circuit has held that confinement in segregation generally does not rise to the level of an "atypical and significant" hardship implicating a liberty interest except in "extreme circumstances, such as when the prisoner's complaint alleged that he is subject to an *indefinite* administrative segregation" or that such confinement was excessively long in duration.  *Joseph v. Curtin*, 410 F. App'x 865, 868

(6th Cir. 2010) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)) (emphasis in original); *see also Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (holding that the prisoner's eight-year confinement in segregation was of "atypical duration" and thus "created a liberty interest that triggered his right to due process").

Here, Plaintiff's allegations about his thirty-day placement in the CRC are insufficient to state a due process claim. *See Dearing v. Denny*, Case No. 1:16-cv-970, 2016 WL 7042073, at *4 (S.D. Ohio Oct. 20, 2016) ("[T]he 30-day period of solitary confinement did not amount to an atypical and significant hardship[.]"), *report and recommendation adopted* 2016 WL 7015794 (S.D. Ohio Nov. 30, 2016); *cf. Mackey v. Dyke*, 111 F.3d 460, 461, 463 (6th Cir. 1997) (117-day delay in releasing the plaintiff from administrative segregation to the general prison population did not impose an atypical or significant hardship on the plaintiff and thus did not trigger due process concerns); *Bradley v. Evans*, No. 98-5861, 2000 WL 1277229, at *7 (6th Cir. Aug. 23, 2000) (citing cases in support of holding that placement for fourteen months in administrative segregation did not impose an atypical or significant hardship on the prisoner); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at *3 (6th Cir. Aug. 11, 1999) (thirty days in security control, fourteen days in disciplinary control, and six to eight months in administrative control did not constitute an "atypical hardship" under *Sandin*). Because Plaintiff does not have a protected liberty interest under the circumstances alleged in his Complaint, he does not state a claim under the Fourteenth Amendment's Due Process Clause. Therefore, Plaintiff's state-law false imprisonment claim, as well as his due process claims stemming from his transfer and CRC placement, should be dismissed.

### 4. Official Capacity and RLUIPA Claims

Plaintiff seeks to hold all Defendants liable in their official and individual capacities. (*See* Doc. 1-1 at 6). Plaintiff further seeks both injunctive relief and monetary damages.

However, Plaintiff's claims against Defendants in their official capacities are subject to dismissal to the extent that he seeks monetary damages. Absent an express waiver, a state is immune from damages suits under the Eleventh Amendment. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139 (1993); *Edelman v. Jordan*, 415 U.S. 651 (1974). The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449 (6th Cir. 1982). The Eleventh Amendment bar extends to actions where the state is not a named party but where the action is essentially one for the recovery of money from the state. *Edelman*, 415 U.S. at 663; *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945). A suit against Defendants in their official capacities would, in reality, be a way of pleading the action against the entity of which Defendants are agents. *Monell*, 436 U.S. at 690. Thus, actions against state officials in their official capacities are included in this bar. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Scheuer v. Rhodes*, 416 U.S. 232 (1974); *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation and ellipsis omitted)). Therefore, all of the named Defendants are immune from suit in their official capacities to the extent that Plaintiff seeks monetary damages.

Similarly, Plaintiff's claims against any Defendant under RLUIPA should be dismissed to the extent he seeks monetary damages because there is no cause of action for damages under RLUIPA. *See Hendricks v. Aramark, Inc.*, No. 2:14-cv-2015, 2015 WL 1809361, at *4 (S.D. Ohio Apr. 21, 2015) (citing cases).

          5.       *Respondeat Superior, Failure to Investigate, and Grievances Process*

The Complaint should also be dismissed to the extent that Plaintiff seeks to hold any Defendant liable based on their supervisory position or for failure to take corrective action. To start, Plaintiff seeks to hold Defendants LeCI Warden Harris and Inspector Hoover "liable for every claim deriving from LeCI" based on their alleged failure to train or supervise employees. (Doc. 1-1 at 21). Plaintiff similarly seeks to hold Defendants MaCI Inspector Gould liable for every claim arising in MaCI for his failure to fix the problems brought to his attention; ICC Liaison Reveal liable for every claim in the Complaint for failing to respond to Plaintiff's letters; and Director Chambers-Smith liable for all claims based on her failure to train or supervise employees. (*Id.* at 20–21).

However, *respondeat superior* does not apply to § 1983 claims and may not serve as a basis for liability. *See Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Social Servs.,* 436 U.S. 658 (1978); *Hill v. Marshall,* 962 F.2d 1209, 1213 (6th Cir. 1992). "[Section] 1983 liability of supervisory personnel must be based on more than the right to control employees." *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984). Further, § 1983 liability is premised on active unconstitutional behavior and not a mere failure to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." (internal quotation omitted)). Nor does a prison official's alleged failure to adequately investigate claims of misconduct rise to the level of "encouragement" that would make the official liable for such misconduct. *Knop v. Johnson,* 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy*, 729 F.2d at 421.

Supervisory liability under § 1983 cannot be based on mere awareness of misconduct or a "failure to act" but must be based on "active unconstitutional behavior." *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002). The mere fact that these Defendants have supervisory roles or failed to take corrective action is not enough to impose liability under section 1983.

Plaintiff's claims concerning the institutional grievance process should also be dismissed. Plaintiff alleges that Defendant Hoover refused to investigate his complaints regarding lost legal mail or permit him to file an informal complaint/grievance. (*Id.* at 18). Plaintiff also appears to seek to hold Defendants Gould, Willis, and Tabor liable based on their responses to Plaintiff's grievances concerning his legal mail and/or religious accommodations, (*id.* at 4, 22–23; Doc. 1-2 at 28–31; Doc. 1-3 at 14–15), and Defendant Harris in connection with his response to a grievance regarding Plaintiff's transfer. (Doc. 1-1 at 8). Based on these allegations, Plaintiff contends that his rights were denied without due process. (*Id.* at 16 ¶ 94; 33 ¶ 182–83). He further contends that Defendants Hoover, Wilson, and Lambert deprived him of his First Amendment right to redress grievances by placing him on a ninety-day grievance restriction. (*Id.* at 35).

Plaintiff's claims cannot give rise to a § 1983 claim because "[p]rison inmates do not have a constitutionally protected right to a grievance procedure." *Miller v. Haines*, No. 97–3416, 1998 WL 476247, at *1 (6th Cir. Aug.03, 1998) (citations omitted); *see, e.g.*, *Hill v. Warden, Southern Ohio Corr. Facility,* No. 1:12-cv-63, 2012 WL 1639991, at *2 (S.D. Ohio Mar. 13, 2012) (recommending dismissal of portion of complaint complaining about "the failure of prison staff to provide [plaintiff] with inmate grievance forms and other deficiencies in the inmate grievance procedure" because "plaintiff has no federal constitutional right to an effective prison grievance procedure"), *report and recommendation adopted*, 2012 WL 1623565 (S.D. Ohio May 9, 2012). Prison officials whose only roles "involve their denial of administrative grievances and their failure

to remedy the alleged [unconstitutional] behavior'" cannot be liable under § 1983.  *Shehee*, 199 F.3d at 300.

Plaintiff likewise fails to state claim upon which relief may be granted to the extent that he contends that Defendants Hoover, Wilson, and Lambert deprived him of the ability to exhaust his claims by placing him on grievance restriction.  While the Prison Litigation Reform Act's exhaustion requirement is "mandatory," *Jones v. Bock*, 549 U.S. 199, 211 (2007), an inmate need only exhaust "available" remedies under the statute, not unavailable ones.  *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016); *see also Paolone v. Altiere*, No. 4:12CV1344, 2012 WL 5463871, at *3 (N.D. Ohio Nov. 8, 2012) ("A corrections officer therefore cannot prevent an inmate from proceeding to court by refusing to accept a grievance or an appeal.").

Plaintiff also contends that Defendants Hoover, Wilson, and Lambert placed him on grievance restriction in retaliation for filing grievances and lawsuits.  (*See* Doc. 1-1 at 27 ¶ 151). However, "[t]he Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim."  *Weatherspoon v. Williams*, No. 2:14-cv-108, 2015 WL 2106401, at *5 (W.D. Mich. May 6, 2015) (citing *Jackson v. Madery*, 158 F. App'x. 656, 660 (6th Cir. 2005)); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x. 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x. 469, 471 (6th Cir. 2001); *Corsetti v. McGinnis*, 24 F. App'x. 238, 241 (6th Cir. 2001)).  The right to file institutional grievances without being subject to retaliation extends only to the filing of non-frivolous grievances, and "an ordinary person of reasonable firmness would not be deterred from filing non-frivolous grievances merely because he or she had been placed on modified status."  *Walker*, 128 F. App'x. at 445-46; *see also Moore v. Sergent*, 22 F. App'x 472, 474 (6th Cir. 2001) (upholding a pre-screening process for grievances, noting that "[a]s [the plaintiff] has not been prevented from continuing to file grievances, he has not been subjected to retaliation").  Accordingly, Plaintiff's claim that these Defendants retaliated

against him in connection with the grievance restriction is insufficient to state a claim upon which relief may be granted and should also be dismissed.

In sum, to the extent that Plaintiff seeks to hold Defendants liable based on a theory of *respondeat superior* for failure to investigate or in connection with the grievance process, his claims should be dismissed for failure to state a claim upon which relief may be granted.

### 6. *Legal Copies, Postage, and Legal Calls*

Although Plaintiff may proceed with his First Amendment claims regarding the mail policy and allegations that implementation of the policy denied him access to the courts, he includes three additional claims that should be dismissed.

First, Plaintiff says that the interference with his legal mail amounted to violations of his Fourth Amendment rights against illegal search and seizure. (Doc. 1-1 at 29 ¶ 163–64). However, "[t]he Supreme Court has held that 'the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell' . . . [and o]ther courts have applied this principle to claims for interference with or interception of legal mail." *Riley v. Semple*, No. 3:17-cv-45, 2017 WL 507214, at *3 (D. Conn. Feb. 7, 2017) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526 (1984), and collecting cases); *see also Carr v. Zwally*, 760 F. App'x. 550, 557 (10th Cir. 2019) (holding that the prohibition against unreasonable searches and seizures did not apply to removal of inmate's religious and legal materials); *Humphrey v. Sec'y Pa. Dep't of Corr.*, 712 F. App'x 122, 125 (3d Cir. 2017) (holding that seizure of legal materials did not state a cognizable Fourth Amendment claim). Although Plaintiff may proceed with his First Amendment claims regarding his legal mail, to the extent he claims violations of the Fourth Amendment, his claims should be dismissed. *See Bloodworth v. Timmerman-Cooper*, No. 2:10-cv-1122, 2013 WL 5295695, at *3 (S.D. Ohio June 11, 2013) ("[T]he issue of whether a prison official can open legal materials outside of an inmate's presence is more appropriately considered under the First

24

Amendment.") (quoting *Horacek v. Grey*, No. 1:09-cv-96, 2010 WL 914819, at *5 (W.D.Mich. Mar. 12, 2010)).

To the extent that Plaintiff raises an Equal Protection claim in connection with his allegations concerning legal mail and Ohio's mail policy, (see Doc. 1-1 at 32 ¶ 178), his claim should also be dismissed. "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011) (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005)). Plaintiff fails to make any allegation that he has been discriminated against or treated differently than those similarly situated with respect to his legal mail. To the contrary, the Court understands Plaintiff to allege that application of the policy—not deviation from it or it being uniquely applied to him—violates his First Amendment rights. Plaintiff may proceed with his legal-mail claims under the First Amendment, but his Equal Protection claim raised in connection with his legal mail should be dismissed for failure to state a claim upon which relief may be granted.

Second, Plaintiff alleges that Defendants Harris, Hoover, Willis, and Tabor refused to provide him with legal copies and postage. (*See* Doc. 1-1 at 13). And third, he claims that Defendants Billingsly and Johnson denied him the ability arrange a confidential legal call. (*Id.* at 14). Yet all these allegations are insufficient to state an actionable First Amendment claim. To do so, Plaintiff must plead and demonstrate that the challenged conduct has hindered or is presently hindering his efforts to pursue a nonfrivolous legal claim. *Lewis v. Casey*, 518 U.S. 343, 351–53 (1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th

Cir. 2005). In addition, when bringing a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "[T]he predicate claim (must) be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* In other words, "only prisoners with non-frivolous underlying claims can have standing to litigate an access-to-courts action." *Hadix v. Johnson*, 182 F.3d 400, 405–406 (6th Cir. 1999) (citing *Lewis*, 518 U.S. at 353 n.3).

Plaintiff fails to allege any facts showing that he suffered an actual injury in any nonfrivolous legal proceeding as a result of being denied postage, legal copies, or phone calls by these Defendants. Plaintiff's First Amendment claim against Defendants Harris, Hoover, Willis, Tabor, Billingsly, and Johnson should be dismissed for failure to state a claim upon which relief may be granted.

### 7. *Eighth Amendment Claims*

Finally, Plaintiff alleges that the denial of accommodations for the Winter Nights Fast and Feasts or inability to otherwise practice his religion amounts to a violation of the Eighth Amendment. (Doc. 1-1 at 31 ¶ 169–70). In support of his claim, Plaintiff alleges "the spiritual damage being suffered by Plaintiff is cruel and unusual punishment." (*Id.*).

Plaintiff's allegations are insufficient to state an actionable claim for relief under the Eighth Amendment. "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Rather, "[t]he Eighth Amendment is concerned only with 'deprivations of essential food, medical care, or sanitation,' or 'other conditions intolerable for prison confinement.'" *Richmond*, 450 F. App'x. at 455–56 (quoting *Rhodes v. Chapman*, 452

26

U.S. 337, 348 (1981)).  Therefore, to establish an Eighth Amendment violation, a plaintiff must first demonstrate objectively the unique deprivation of "the minimal civilized measure of life's necessities." *Id.* at 454 (quoting *Rhodes*, 452 U.S. at 347).  He then must subjectively show the defendant acted "wantonly," with "deliberate indifference to the plaintiff's serious needs." *Id.* at 455 (citing *Farmer*, 511 U.S. at 834).

While Plaintiff's allegations regarding the denial of religious accommodations may proceed in this action under the First Amendment, his allegations do not rise to the level of cruel and unusual punishment under the Eighth Amendment.  "[A] claim of failure to accommodate religious dietary needs arises under the First Amendment and not the Eighth." *Gatyln v. Doe*, No. 24-cv-22444, 2024 WL 3225841, at *5 (S.D. Fla. June 28, 2024) (quotation marks and citation omitted); *see also Spencer v. Whorton*, No. 07-cv-00635, 2010 WL 6001593, at *18 (D. Nev. Nov. 18, 2010) ("While the court recognizes that religion is critically important to many individuals' personal emotional and spiritual health and well-being, the court is unwilling to construe allegedly abridged religious practice as denial of a basic life necessity for the purposes of the Eighth Amendment."), *report and recommendation adopted in part*, 2011 WL 846066 (D. Nev. Mar. 7, 2011); *Perez v. Westchester Cnty. Dep't of Corr.*, No. 5-cv-8120, 2007 WL 1288579, at *5 (S.D.N.Y. Apr. 30, 2007) ("Plaintiffs have not and cannot provide any authority for the proposition that denial of halal food in prison would rise to the level necessary to be deemed cruel and unusual under the Eighth Amendment.") (internal brackets omitted).  Plaintiff's Eighth Amendment claim should be dismissed.

### 8.    *Summary and Recommendation*

In sum, Plaintiff may proceed in this action with the following claims:

1. Plaintiff's First Amendment access-to-courts and legal-mail; Sixth Amendment right-to-counsel; and Fourteenth Amendment due process claims against Defendants Chambers-

Smith, Payne, Smith, Grey, and John/Jane Doe mailroom employees based on his allegations that these Defendants approved, implemented, and/or enforced ODRC's legal-mail policy in violation of his rights, (Doc. 1-1 at 23 ¶ 129; 30 ¶ 167–68, 34 ¶ 186);

2. Plaintiff's First Amendment and Equal Protection claims, based on his allegation that Defendants Palmer, Casto, Kohn, and Davis denied him religious accommodations and the ability to practice his religion, (Doc. 1-1 at 28 ¶ 157–59; 32 ¶175–76);

3. To the extent he seeks declaratory and injunctive relief, Plaintiff's RLUIPA claims, also against Defendants Palmer, Casto, Kohn, and Davis, (Doc. 1-1 at 22–23 ¶ 127–28); and

4. Plaintiff's supplemental state law claims under Ohio Revised Code § 5120.50 (but only as they relate to Plaintiff's legal mail, access-to-courts, and denial of religious accommodations claims), based on his allegation that he has been denied legal rights in Ohio that he had in Montana.  (Doc. 1-1 at 14 ¶ 82).

It is **RECOMMENDED** that Plaintiff's remaining claims be dismissed.  Specifically, Plaintiff's miscellaneous claims against Defendants Rojas, Ullery, Watts, Estep, Gould, and Lyons; his claims against ManCI Defendants Blankenship, Weidner, McConahay, and Henry; and his claims asserted against Montana Defendants Godfrey, Reich, Salmonsen, and Somogy should be **DISMISSED without prejudice**.  *See* Fed. R. Civ. P. 21.  Any remaining claims should be **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

## II.    MOTION FOR INJUNCTION AND DECLARATION OF RIGHTS

Plaintiff has also filed a motion for injunction and a declaration of rights.  (Doc. 2).  The motion is based on Plaintiff's legal-mail, access-to-courts, and religious practice claims asserted in his Complaint.  Plaintiff alleges that he has engaged in a hunger strike to protest "the absolute refusal by Defendants to provide him any accommodations to actually practice his religion and the

intentional interference with his access to the courts/deliberate denial of clearly established legal rights." (*Id*. at 1). Plaintiff seeks preliminary injunctive relief in the form of an order for Defendant Chambers-Smith and her employees to accommodate Plaintiff's religious practices and to "treat all of [Plaintiff's] properly marked legal mail from courts, attorneys, or other legal entities as legal mail, opening it only in his presence (never photocopying it or delaying his receipt) and ensuring that he receives all of his mail or return him to Montana where he will be afforded these legal rights." (*Id.* at 3). Plaintiff also seeks for the Court to order Chambers-Smith to afford Plaintiff the same rights he would have in Montana in connection with his hunger strike and forced medical care, feeding, or medication. (*Id.*).

In determining whether to issue a preliminary injunction/temporary restraining order, this Court must consider four factors.

> First, the court must determine "whether the plaintiff has established a substantial likelihood or probability of success on the merits" of his claim. *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010) (internal quotation marks omitted). Second, the court will determine "whether the [plaintiff] would suffer irreparable injury" if a preliminary injunction did not issue[.] Third, the court determines "whether the injunction would cause substantial harm to others." [] And finally, a court must consider "whether the public interest would be served" if the court were to grant the requested injunction.

*Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 690 (6th Cir. 2014)*.*

The four factors are not prerequisites but must be balanced as part of a decision to grant or deny injunctive relief. *In re DeLorean Motor Co*., 755 F.2d 1223, 1229 (6th Cir. 1985). "[A] district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003), *abrogated on other gds. by Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015).

"The purpose of a preliminary injunction is to preserve the status quo until a trial on the

merits." *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 848-49 (6th Cir. 2017) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). When a prisoner requests an order enjoining a state prison official, the Court must "proceed with caution and due deference to the unique nature of the prison setting." *White v. Corr. Med. Servs.*, No. 1:08-cv-277, 2009 WL 529082, at *2 (W.D. Mich. Mar. 2, 2009) (citing *Kendrick v. Bland*, 740 F.2d 432, 438 n. 3 (6th Cir. 1984); *Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995)). In deciding if a preliminary injunction is warranted, the Court must "weigh carefully the interests on both sides." *Lang v. Thompson*, No. 5:10-cv-379-HRW, 2010 WL 4962933, at *4 (E.D. Ky. Nov. 30, 2010) (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975)). A preliminary injunction is an extraordinary remedy that should only be granted "upon a clear showing that the plaintiff is entitled to such relief." *S. Glazer's Distributors of Ohio, LLC*, 860 F.3d at 849 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

While the Court does not take Plaintiff's allegations regarding his hunger strike lightly, Plaintiff has not alleged facts sufficient to warrant a temporary restraining order or preliminary injunction in this case. Plaintiff has made no attempt to apply the above factors to his situation. A preliminary injunction is also not warranted in this case because the purpose of a preliminary injunction—to preserve the status quo until a trial on the merits can be held—would not be served. *See Southern Milk Sales, Inc. v. Martin*, 924 F.2d 98, 102 (6th Cir. 1991). The remedy Plaintiff presently seeks is more than an injunction maintaining the status quo. He seeks an order from this Court requiring the correction of constitutional violations yet to be proven. Such affirmative relief is generally beyond the scope and purpose of preliminary injunctive relief. *See id*. Further, the Undersigned notes that nothing in Plaintiff's motion suggests that ManCI staff are unaware of his situation or that he is being denied adequate medical care. Accordingly, it is **RECOMMENDED** that Plaintiff's motion (Doc. 2) be **DENIED.**

### III.    CONCLUSION

<strong>IT IS RECOMMENDED THAT:</strong>

1. The Court **SEVER** and **DISMISS without prejudice** Plaintiff's unrelated claims against Defendants Rojas, Ullery, Watts, Estep, Gould, and Lyons; his claims against ManCI Defendants Blankenship, Weidner, McConahay, and Henry; and his claims asserted against Montana Defendants Godfrey, Reich, Salmonsen, and Somogy.  *See* Fed. R. Civ. P. 20(a)(2), 21.

2. The remaining claims be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), with the exception of (1) Plaintiff's First Amendment access-to-courts and legal-mail; Sixth Amendment right-to-counsel; and Fourteenth Amendment due process claims against Defendants Chambers-Smith, Payne, Smith, Grey, and John/Jane Doe; (2) Plaintiff's First Amendment and Equal Protection claims for the denial of religious accommodations and the ability to practice his religion against Defendants Palmer, Casto, Kohn, and Davis; (3) to the extent he seeks declaratory and injunctive relief, Plaintiff's RLUIPA claims against Defendants Palmer, Casto, Kohn, and Davis; and (4) Plaintiff's supplemental state law claims under Ohio Revised Code § 5120.50 for Plaintiff's legal mail, access-to-courts, and denial of religious accommodations claims.

3. Plaintiff's "Emergency Motion for Injunction and Declaration of Rights" (Doc. 2) be **DENIED.**

4. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that, for the foregoing reasons, an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and therefore deny Plaintiff leave to appeal *in forma pauperis*.  *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

**IT IS ORDERED THAT:**

1. The Clerk shall copy the Complaint and attached exhibits to effect service on the remaining eight Defendants.  The United States Marshal shall serve a copy of the complaint, summons, the separate Order issued this date granting Plaintiff *in forma pauperis* status, and this Order and Report and Recommendation upon Defendants Chambers-Smith, Payne, Smith, Grey, Palmer, Casto, Kohn, and Davis.  All costs of service shall be advanced by the United States.

2. Before service may be issued upon the remaining John/Jane Doe Defendants, Plaintiff must file a motion to issue service setting forth the identity of the unidentified Defendants.  Plaintiff is therefore **ORDERED** to file a motion to issue service, including United States Marshal and summons forms, if and when Plaintiff discovers the identity of the unnamed Defendants through discovery.  Plaintiff is advised that no service will be issued on the unnamed Defendant unless Plaintiff complies with this Order.

3. Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon Defendants' attorney(s), a copy of every further pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to Defendants or Defendants' counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Date: September 20, 2024

/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE REGARDING OBJECTIONS</u>

Pursuant to Federal Rule of Civil Procedure 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).